IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH ELAINE BREECE )<br>)<br>v. )<br>)<br>SOCIAL SECURITY ADMINISTRATION ) | No. 3:14-2307<br>Judge Campbell/Bryant |

To: The Honorable Todd Campbell, District Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under Title II of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 15). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her application for benefits on November 22, 2010, alleging a disability onset date of January 1, 2007, which was subsequently amended to June 6, 2010

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

(Tr. 38, 42) Plaintiff's claim was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her claim by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on April 2, 2013, when plaintiff appeared without counsel and gave testimony. (Tr. 31-57) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until July 10, 2013, when he issued a written decision finding plaintiff not disabled. (Tr. 11-22) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of June 6, 2010 through her date last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease; status post foot mass removal; and major depressive [disorder] (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with only occasional balancing, stooping, kneeling, crouching and crawling; occasionally climbing ramps and stairs; no climbing ladders, ropes or scaffolds; frequent overhead reaching bilaterally; would need a sit stand option every 30 to 60 minutes; only occasional contact with the general public; a job that involved only simple, routine, repetitive and low level detailed, but not complex tasks; and gradual and infrequent workplace changes.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 5, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2007, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)).

(Tr. 13-15, 20-22)

On September 26, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following summary of the evidence of record is taken from plaintiff's brief, Docket Entry No. 14-1 at pp. 2-4:

Plaintiff was forty-eight years of age on the date last insured. (R. 62). She has a high school education. (R. 38). Plaintiff has past relevant work as a cashier; sales clerk; laundry worker; and waitress. (R. 24). Ms. Breece alleges disability due to a combination of severe physical and mental impairments, including lumbar degenerative disc disease with radiculopathy and stenosis; right foot mass status post removal; major depressive disorder; and generalized anxiety disorder.

Kenneth Dodge, M.D. has served as Plaintiff's long-time treating physician since 1998. (R. 399). Dr. Dodge provided a letter dated October 12, 2012 summarizing Plaintiff's medical history, which stated as follows:

> Deborah Breece is a patient of mine. I have seen for multiple years for degenerative disc disease as well as mild to moderate spinal stenosis. She also, in the past, has seen orthopaedics as well as a pain doctor. At this time spinal epidurals have not felt to be helpful. Surgery is not considered a good option noting the significant amount of degenerative changes. She has been taking Lortab 10/500 mg one tablet three times a day which has been fairly effective. She is encouraged to try Mobic 15 mg daily. She also is encouraged to return to water aerobics for which she has found helpful.
>
> In spite of the above medications, patient's ability to stand any prolonged period of time is limited. Any significant physical activity also dramatically impairs her ability to function. I suspect her long term prognosis will remain poor.

(R. 644). In addition, Dr. Dodge completed a Medical Opinion dated November 14, 2012 regarding Plaintiff's physical functional abilities. (R. 729). Dr. Dodge opined that Ms. Breece

4

could lift and carry no more than ten pounds in a normal workday. He felt she would be able to stand and walk about two hours and sit for about four hours in a normal workday. Dr. Dodge also provided, among other things, that Plaintiff would need to change position in short intervals; need to shift at will from position; would need to lie down unpredictably once per day; and would be absent from work more than four days per month due to medical reasons. (See R. 729-30).

[The objective medical evidence in this case includes a] lumbar MRI scan performed July 6, 2010 [which] showed multi-level disc bulging causing central canal, lateral recess and neural foraminal stenosis. Specifically, the MRI showed a lateral disc protrusion at L2-3 resulting in moderate stenosis, mild bulges at L3-4 and L5-S1 and a moderate disc bulge at L4-5. (R. 515). Lumbar myelogram performed October 8, 2010 showed L2-L3 and L3-L4 degenerative disc disease with associated spondylosis; moderate epidural deformities; L4-5 moderate anterior epidural deformity with moderate spinal stenosis and flattening of the L5 nerve roots bilaterally; and L5-S1 anterior epidural deformity with medial displacement of the left S1 nerve root sleeve. (R. 531). CT scan performed the same date revealed a "large" right paracentral disc herniation at L2-3 with moderate to severe right foraminal stenosis; L4-5 moderate spinal stenosis; and L5-S1 disc herniation superimposed upon a diffuse disc bulge. (R. 560). Plaintiff ultimately failed conservative treatment measures, including epidural steroid injections (R. 335-38) and was ultimately referred to pain management. Plaintiff attended pain management at the Pain Management Group throughout the calendar year 2011. (R. 647-711).

Plaintiff has been under the care of mental health professional since at least 2007. (R. 643). On October 18, 2012, treating psychiatric nurse practitioner Carol Gilpin,

5

APRN-BC provided a written statement outlining Plaintiff's mental impairments. Ms. Gilpin stated as follows:

> I am writing as the treating nurse practitioner of psychiatry for my patient referenced above, Deborah Breece. Ms. Breece has a diagnosis of MDD Recurrent Moderate (296.32) and GAD (300.02). Her current medications include Cymbalta 120 mg once daily and Vyvanse 70 mg once every morning. Deborah's symptoms include low mood, impaired focus and concentration, feelings of worthlessness and guilt, poor sleep and severe fatigue. She also suffers from feeling restless and on edge. Her current prognosis is guarded. She may be able to achieve symptom relief but symptom remission is unlikely. . . .

(R. 708). In addition, Ms. Gilpin completed a Mental Functional Assessment dated March 28, 2013 that endorsed "moderate" and "marked" limitations in all relevant areas. (R. 777-79).

Reference to addition record evidence is made in the discussion below, as necessary to address the parties' legal arguments.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th

Cir. 2007)(quoting <u>Cutlip v. Sec'y of Health & Human Servs.</u>, 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., <u>Longworth v. Comm'r of Soc. Sec.</u>, 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007); <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

B. <u>Proceedings at the Administrative Level</u>

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." <u>Id.</u> at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed

7

impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional,

severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

## C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Dodge, without providing good reasons for this rejection. As the Sixth Circuit has explained, the opinion of a treating source such as Dr. Dodge is to be reviewed deferentially:

> The Commissioner has elected to impose certain standards on the treatment of medical source evidence. 20 C.F.R. § 404.1502. Under one such standard, commonly called the treating physician rule, the Commissioner has mandated that the ALJ "will" give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527[(c)]. If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527([c])(2)).
>
> Importantly, the Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion." 20 C.F.R. § 404.1527([c])(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore

9

might be especially bewildered when told by an administrative bureaucracy
that [ ]he is not." Wilson, 378 F.3d at 544. Significantly, the requirement
safeguards a reviewing court's time, as it "permits meaningful" and efficient
"review of the ALJ's application of the [treating physician] rule." Id. at 544-45.

Cole v. Astrue, 661 F.3d 931, 937-38 (6th Cir. 2011). Again, plaintiff does not argue that Dr. Dodge's opinion is due controlling weight, but claims error in the ALJ's rejection of that opinion without giving good reasons therefor. The ALJ's decision contains the following analysis of Dr. Dodge's opinion that plaintiff's impairments would preclude full time work:

> The undersigned considered the opinion of the claimant's long time treating physician Dr. Dodge dated November 14, 2012 (Ex. 25F), but finds Dr. Dodge's opinion overly restrictive in light of the evidence of record, including his own examinations of the claimant during the period in question that demonstrated mostly findings of peripheral edema likely related to the claimant's consumption of salty foods, but no serious musculoskeletal or neurological abnormalities (Ex. 5F). Dr. Dodge admitted in a letter dated October 12, 2012, that the claimant's use of Lortab has been fairly effective (Ex. 19F, p. 1). Given Dr. Dodge's statement, it is reasonable to assume that the claimant's use of Lortab throughout the period in question was also fairly effective. Further, Dr. Dodge's opinions were rendered after the claimant's date last insured, and Dr. Dodge gave no indication that his opinions were applicable to the claimant's ability to work during the period in question. Thus, the undersigned given Dr. Dodge's opinions little weight.

(Tr. 20)

Plaintiff contends that these reasons are insufficient, relying principally upon the results of imaging studies obtained during the relevant period to establish support for Dr. Dodge's subsequent assessment of plaintiff's disabling level of impairment. However, while the 2010 reports of x-ray, MRI, CT, and myelogram results in June, July, and October 2010 (Tr. 200-205, 511) do plainly establish an objective basis for plaintiff's complaints of back and leg pain, the ALJ properly acknowledged this fact (Tr. 15-16) before proceeding to question

10

Dr. Dodge's assessment of the duration and severity of the resulting symptoms, in light of the medical treatment she was receiving. Plaintiff takes issue with the ALJ's citation of Dr. Dodge's treatment notes, arguing that those notes do not support the existence of a disabling level of back and leg pain because he referred plaintiff to specialists for the treatment of her spinal condition and pain management, rather than treat these conditions himself. (Docket Entry No. 14-1 at 12) As defendant notes, this argument is a bit self-defeating, since it invites the conclusion that Dr. Dodge was not in fact a treating physician with respect to those conditions which formed the basis for his assessment. Notably, plaintiff failed to produce an assessment from any treating specialist. Although the objective medical data clearly supports the conclusion that plaintiff's lumbar spine has suffered significant degenerative changes, Dr. Dodge's treatment notes do not provide substantial support for his assessment of disabling limitations resulting therefrom.

  Moreover, given this lack of specific attention from Dr. Dodge to the conditions which plaintiff claims were disabling prior to 2012, the undersigned finds that the ALJ reasonably questioned whether Dr. Dodge's subsequent observation that plaintiff's symptoms were fairly controlled by Lortab would not also be the case during the relevant period. In discussing plaintiff's treatment at the pain management clinic, the ALJ noted that plaintiff "admitted that her medications allow her to be more active and perform household chores." (Tr. 17, 651, 660, 663, 666) He further noted that plaintiff reported that her pain medications gave her energy. (Tr. 17, 718) The ALJ observed that Dr. Dodge rendered his assessment after plaintiff's date last insured, during a time when he noted more than once that Lortab held plaintiff's pain in check. (Tr. 20, 464-67) Specifically, the ALJ made reference to the following letter from Dr. Dodge in support of plaintiff's disability claim,

11

dated October 12, 2012:

> Deborah Breece is a patient of mine. I have seen her for multiple years for degenerative disc disease as well as mild to moderate spinal stenosis. She also, in the past, has seen orthopaedics as well as a pain doctor. At this time spinal epidurals have not felt to be helpful. Surgery is not considered a good option noting the significant amount of her degenerative changes. She has been taking Lortab 10/500mg one tablet three times a day which has been fairly effective. She is encouraged to try Mobic 15mg daily. She also is encouraged to return to water aerobics for which she has found helpful.
>
> In spite of the above medications, patient's ability to stand any prolonged period of time is limited. Any significant physical activity also dramatically impairs her ability to function. I suspect her long term prognosis will remain poor.

(Tr. 640) Defendant further notes that on the same day that Dr. Dodge completed his assessment, he reported that plaintiff's pain was "still present but manageable." (Tr. 731) Furthermore, the ALJ accounted for plaintiff's limited ability to stand for prolonged periods by including in his RFC finding the necessity of a sit/stand option allowing for postural changes every 30 to 60 minutes.

Upon review of the ALJ's rationale and the record in this case, the undersigned must conclude that the ALJ gave good and sufficient reasons for discounting the weight of Dr. Dodge's assessment. While plaintiff also asserts the same arguments found insufficient here vis-à-vis Dr. Dodge's assessment in support of his position that the ALJ erroneously discounted the October 2012 and March 2013 assessments of his treating mental health nurse practitioner, Nurse Gilpin, the undersigned likewise finds substantial evidence supporting the ALJ's weighing of the mental health opinion evidence. This is particularly so inasmuch as Nurse Gilpin is not an "acceptable medical source" whose opinion may be accorded the

12

preference established under the regulations for a treating physician, but is rather an "other source" whose opinion is to be considered alongside the other relevant evidence of mental impairment severity (or, as here, nonseverity).  20 C.F.R. § 404.1513(a), (d).

Plaintiff next argues that the ALJ erred in assigning significant weight to the opinions of nonexamining consultants rendered on March 29 and October 11, 2011, inasmuch as those opinions did not consider the complete medical record.  The Sixth Circuit has recently held that "[w]here the non-examining source did not review a complete case record, 'we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion' from a non-examining source."  Miller v. Comm'r of Soc. Sec., --- F.3d ----, 2016 WL 362423, at *5 (6th Cir. 2016) (quoting Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009)).  It is clear in this case that the ALJ amply considered plaintiff's treatment during the entirety of the relevant period, and beyond.  The second nonexamining consultant, in affirming the March 2011 opinion of the first, stated on October 11, 2011 -- less than two months before plaintiff's date last insured -- that he considered plaintiff's allegation of worsening symptoms related to her back impairment, but that the record did not reflect any additional treatment of that condition.  (Tr. 439)  The record does contain treatment notes documenting plaintiff's ongoing pain management visits during the time between March and December 2011 (Tr. 647-99), but these notes do not reveal any particular change in plaintiff's condition or pain level.  The ALJ recognized that plaintiff sought treatment during July 2011 for a mass in her right foot, which had become more painful recently and was surgically excised on July 18, 2011, but from which plaintiff

13

appeared to recover within the calendar year. (Tr. 18)[2] The radiographic evidence in this case was available to the nonexamining consultants, who recognized (as did the ALJ) that it confirmed a back disorder that would be expected to cause pain. The ALJ properly considered the evidence which the nonexamining consultants could not have, including the November 2012 assessment of Dr. Dodge, and resolved the discrepancies as follows:

> Although overly optimistic in some areas, the undersigned gives significant weight to the opinions of the state agency medical consultant[s] in that they support the contention that the claimant had the capacity for light exertional activities during the relevant period (Exs. 7F and 11F). The residual functional capacity above is generally consistent with medical imaging reports of the claimant's back, the claimant's subjective reports of pain, considering treatment records that showed a significant improvement in the claimant's pain with conservative measures, the claimant's history of right foot surgeries, the claimant's testimony at the hearing, observations of the claimant,[3] and physical examinations of the claimant. Taken together, the claimant's physical impairments warrant no further restrictions than those indicated above. . . .

---

[2]The ALJ makes reference to the note from plaintiff's December 5, 2011 visit to Dr. Dodge, in which the following information pertinent to her residual back and foot pain:

> Discussion at length regarding her back and options that she has chosen. At this point feels frustrated that pain still hasn't changed in spite of nerve burns, multiple steroid epidurals; finds that nonsteroidals sometimes will help. ... After much conversation will use Lortab 10/500 one every eight hours or less. ... Patient promises to walk and swim for thirty minutes per day at least three times per week.

(Tr. 467)

[3]Among the "observations of the claimant" which the ALJ had earlier noted were those recorded by the consultative psychological examiner on April 26, 2011, when plaintiff was noted to be polite, friendly, and calm, and "was observed chatting casually with her friend, no[t] exhibiting over[t] symptoms of distress"; it was observed that plaintiff's presentation did not support a diagnosis of depression, that her performance on testing indicated that she was exaggerating her symptoms, that she reported a robust range of daily activities, and that she adequately performed on all phases of her mental status examination. (Tr. 19, 417-22)

14

(Tr. 19-20) In short, the ALJ's consideration of the timing of the treating physician's assessment and its inconsistency with treatment records, as well as his consideration of medical and testimonial evidence which postdates the nonexamining consultants' opinions and which aligns with his RFC finding, satisfies the undersigned that the circumstances were appropriate for the ALJ to give greater weight to these consultants' opinions than to the opinion of Dr. Dodge. See Blakley, 581 F.3d at 409 (quoting Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).

Plaintiff next argues that the ALJ erred in "playing doctor" when, lacking any single opinion to which he could assign controlling weight, he arrived at a mental RFC determination that essentially split the difference between the assessments of plaintiff's treating mental health nurse practitioner (who assessed numerous areas of marked functional limitation (Tr. 773-75)) and the consultative psychological examiner (who assessed zero functional limitation (Tr. 421)). Plaintiff cites Meece v. Barnhart, 192 Fed. Appx. 456, 465 (6th Cir. Aug. 8, 2006), as authority for this proposition. However, Meece is inapposite to the issue raised by plaintiff here. In Meece, the ALJ rejected the claimant's allegation of disabling headaches by reference to the fact that his doctors did not prescribe certain drugs commonly associated with migraine headaches, prompting the court to note that "[w]hile the ALJ may have prescribed different pain medication than that prescribed by Plaintiff's doctors, this decision is beyond the expertise of the ALJ and is not a legitimate basis for an adverse credibility determination." Id. Far more compelling here are the cases cited by defendant, in particular Rudd v. Comm'r of Soc. Sec., 531 Fed. Appx. 719 (6th Cir. Sept. 5, 2013), where the court stated:

15

> Next, Rudd contends that the ALJ's RFC is not supported by substantial evidence because no physician opined that Rudd was able to perform the standing and walking requirements of light work. As we have mentioned, the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence. As the Commissioner points out, the Commissioner has final responsibility for deciding an individual's RFC, SSR 96-5p, 1996 WL 374183 (July 2, 1996), and to require the ALJ to base her RFC finding on a physician's opinion, "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* This argument is rejected.

<u>Id.</u> at 728. The undersigned finds no error in the ALJ determination of plaintiff's mental RFC.

Finally, plaintiff argues that the ALJ erred in failing to account for the evidence of her medical need to use a cane to assist in ambulation, and that this failure undermined his determination that she could engage in the walking and carrying required for light work. However, while the limited report of the consultative physical examiner in this case made reference to plaintiff's use of a cane as "medically necessary" (Tr. 404), the ALJ clearly determined that while plaintiff was observed to make use of a cane, the record did not support a finding that the use of a cane was necessary for ambulation. (Tr. 13, 17) In support of this determination, the ALJ refers to clinical evidence that plaintiff was found to display normal gait and station (Tr. 17, 18), and to the opinion evidence which does not recognize the need for a cane. Substantial evidence supports this finding.

In sum, the undersigned concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence

that would support the opposite conclusion. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, the undersigned would recommend that the administrative decision be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 2nd day of March, 2016.

                                                 s/ John S. Bryant
                                                 JOHN S. BRYANT
                                                 UNITED STATES MAGISTRATE JUDGE